## Schayer v. The People.

1. Criminal Law—Obtaining Credit by False Report—Indictment.

To constitute the offense defined by statute (Gen. Stats., sec. 884) it is not necessary that an intention to defraud any particular person should exist. If the false report which has been procured results in defrauding any person of his property, the offense is complete whether the offender had such person in mind or not. An indictment setting forth that the person charged caused others to report

falsely of his honesty, wealth or mercantile character, and that by means of the report some person or persons, naming them, were imposed upon so that they extended credit to the offender, and that he thereby obtained possession of their property, would contain substantially all the facts necessary to constitute an offense.

2. IDENTITY—VARIANCE.

Where the identity of a charge is dependent upon an allegation which is unnecessary, or where an indispensable allegation is made need-lessly specific, the unnecessary matter cannot be rejected as surplusage, but must be proven as averred, or the prosecution must fail.

*Error to the District Court of Arapahoe County.*

Mr. D. J. HAYNES and Messrs. COE & CARPENTER, for plaintiff in error.

THE ATTORNEY GENERAL, and Mr. H. T. SALE, of counsel, for the People.

THOMSON, J., delivered the opinion of the court.

The plaintiff in error was convicted of fraudulently obtaining possession of goods, wares and merchandise of P. L. Bockfinger & Co. by means of a false report of his wealth and mercantile character, which he caused to be made by the mercantile agency of R. G. Dun & Co. to Bockfinger & Co. The indictment charges that on the 8th day of September, 1890, Ismar Schayer, devising and intending to cause and procure the mercantile agency of R. G. Dun & Co. to report falsely his wealth and mercantile character to Bockfinger & Co., and thereby to impose upon them, and to obtain a credit from them, and by means of such credit to get into' his possession goods, wares and merchandise belonging to them, and to cheat and defraud them thereof, falsely represented his wealth and standing to Dun & Co., and procured Dun & Co. to make the false report to Bockfinger & Co.; and that by means of the false report which the defendant so caused and procured to be made to Bockfinger & Co.,

he obtained a credit from that firm and fraudulently obtained possession of certain goods, wares and merchandise belonging to them.

The law upon which the prosecution is based reads as follows : " If any person shall cause or procure others to report falsely of his honesty, wealth or mercantile character, and by thus imposing on any person or persons, obtain credit, and thereby fraudulently get into possession of goods, wares, merchandise or any valuable thing, every such offender shall be deemed a swindler, and on conviction shall be sentenced to return the property so fraudulently obtained, if it can be done, and shall be fined not exceeding one thousand dollars, and imprisoned in the county jail not exceeding six months." Gen. Stats., 1883, p. 343, sec. 884.

The uncontradicted evidence was that at the time Schayer made the statement to Dun & Co. he had no knowledge of the firm of Bockfinger & Co.; so that the statement could not have been made for the purpose of being communicated to Bockfinger & Co., or with any intent, special or general, of defrauding them. The proof therefore disagreed with the allegations, and the question to be determined is whether the variance was of such a character as to render it fatal.

To constitute the offense defined by the statute, it is not necessary that an intention to defraud any particular person or persons should exist. If the false report which has been procured results in defrauding any person of his property, the offense is complete whether the offender had such person in his mind or not; and an indictment setting forth that the person charged caused others to report falsely of his honesty, wealth or mercantile character, and that by means of the report some person or persons, naming them, were imposed upon so that they extended credit to the offender, and he thereby fraudulently obtained possession of their property, would contain substantially all the facts necessary to constitute the offense under the statute. But in this indictment the obtaining of Bockfinger & Co.'s goods is inseparably connected with a design to defraud these particular individ-

uals. It alleges that the defendant procured Dun & Co. to report falsely, not generally or to the public, but specially to them; that in procuring the report he devised and intended to impose upon them and obtain a credit from them, and in pursuance of the credit to get into possession of their property fraudulently; and that by means of that report, procured in that manner and for that purpose, he did fraudulently obtain possession of their goods. If the averments were true the defendant's sole purpose in procuring the report was to enable him to defraud Bockfinger & Co. This alleged original design of the defendant pervades the whole indictment, and if everything that relates to it should be stricken out there would be no offense charged. It is well settled that where the identity of a charge in an indictment is dependent upon an allegation which is unnecessary, or where an indispensable allegation is made needlessly specific, the unnecessary matter cannot be rejected as surplusage, but must be proven as averred, or the prosecution must fail. *Clark v. Commonwealth*, 16 B. Monroe, 206; *Commonwealth v. Magowan*, 1 Met. (Ky.) 368; *State v. Jackson*, 30 Me. 29; *U. S. v. Brown*, 3 McLean, 233.

In *Commonwealth v. Harley et al.*, 7 Met. (Mass.) 506, it was held that a charge in an indictment of a conspiracy to defraud a particular individual was not supported by evidence of a conspiracy to cheat the public generally, although it did in fact operate to defraud the individual named; and that the variance between the allegations and the proof was fatal to the prosecution. See also *Commonwealth v. Kellogg*, 7 Cush. 473.

An allegation in this indictment of a purpose on the part of the defendant to defraud the public generally, or such person as the act committed might operate to defraud, and that by means of the act Bockfinger & Co. were in fact defrauded, would have been sufficient; but the charge of intention was specific, and the proof not only failed to support it, but established a state of facts inconsistent with it.

The defendant requested instructions to the effect that

to convict the defendant under the indictment it must be shown that he procured the false report to be made to Bockfinger & Co., and did so with the intention of defrauding them; but the instructions were refused, and others given at the instance of the people, which directed a conviction if the jury should believe that the defendant caused Dun & Co. to make a false report of his standing, and that by reason of the report Bockfinger & Co. extended credit to the defendant and were thereby defrauded of their goods. The instructions refused should have been given, and those given refused.

The judgment should be reversed.

Bissell, P. J., concurs.

Reed, J., dissenting.

I regret that I cannot concur in the conclusion reached by the majority of this court. Were the question less important, I should content myself with entering a dissent, without giving my reasons for differing; but, being of grave importance to the commercial interests of the state, I shall briefly state my objections.

The plaintiff was indicted under section 884, Gen. Stats.: "If any person, by false representations in writing of his own responsibility, wealth or mercantile correspondence and connection, shall obtain a credit thereby, defraud any person or persons of money, goods, chattels or any valuable thing, or if any person shall cause or procure others to report falsely of his honesty, wealth or mercantile character, and by thus imposing on any person or persons, obtain credit, and thereby fraudulently get into possession of goods, wares, merchandise or any valuable thing, every such offender shall be deemed a swindler, and on conviction shall be sentenced to return the property so fraudulently obtained, if it can be done, and shall be fined not exceeding one thousand dollars, and imprisoned in the county jail not exceeding six months."

It is charged in the indictment that plaintiff made to the mercantile agency of R. G. Dun & Co. a false statement of his means, finances, and responsibility as a merchant; that P. L. Bockfinger & Co., wholesale dealers, were subscribers to or patrons of the Dun Mercantile Agency; that the false statement made to the agency was by it communicated to Bockfinger & Co., by means of which plaintiff obtained a credit with the firm, and goods to the value of $500, fraudulently, and with the intention of cheating and defrauding Bockfinger & Co. It appears that on September 8, 1890, an agent of Dun & Co. went to plaintiff's place of business to obtain information in regard to his financial standing; that plaintiff went to the office of the company, or to that of the agent, and there made the following statements, which were reduced to writing: "I am worth about $1,500, net. My means consist of three notes, each due in a few days, stock of goods worth $200 or $300, and cash. Have no liabilities."

It is shown by the evidence that, four or five months afterwards, plaintiff failed for several thousand dollars, and made an assignment. No losses of importance were shown to have occurred. Plaintiff was examined in regard to his assignment before a special commissioner appointed by the court, and also testified in his own behalf upon the trial. The testimony given upon the two occasions was not only variant and conflicting, but by both, as well as that of one of his own witnesses, the statement made to Dun & Co. was shown to have been false in very important particulars. In the statement to Dun & Co. his assets were given to make up the $1,500—stock of goods, $200 or $300, cash, and the bulk in three notes shortly to become due. By his evidence and that of his witness, it was shown the three notes, aggregating $480, were traded for the stock, and it was not shown that he subsequently had any other notes, or cash to any amount. In his own testimony he attempts to establish the correctness of his statement to Dun & Co. that he was worth $1,500 by showing that he had bought the stock of goods for

$300 or $400, and had reported it to Dun & Co. as of the value of $200 or $300; it was really worth $800 or $1,000 —clearly establishing the falsity of the statement made to Dun & Co., not only of the value of his assets, but their character.

It is held in the opinion that, to warrant a conviction, an intention to deceive the particular firm of Bockfinger & Co. must have been shown, and that in this respect the evidence was fatally defective, and the conviction unwarranted. I do not so understand the statute. The character and business of mercantile agencies, and the relation they bear to their patrons and the mercantile community, are so well understood that no man attempting to do a mercantile business is unfamiliar with them. The plaintiff in his testimony attempts to claim ignorance of the concern and its purposes, yet shows that, when called upon, he went to its office, and gave the required information. Had he not fully understood the purpose for which the inquiries were made, he could only have resented the interference as an unwarranted impertinence in his private affairs, and refused all information. The statute appears to have been drawn with direct reference to mercantile agencies, or institutions of that kind. It is not necessary that the statement should be made to the defrauded party, or to any particular individual or firm. The language is " or if any person shall cause or procure others to report falsely of his honesty, wealth or mercantile character, and by thus imposing on *any person or persons*, obtain credit, and thereby fraudulently get into possession," etc. The person who, intentionally and knowingly, falsely represents his financial ability to any agency or person, for the purpose of establishing credit in a community, and by such means succeeds in his fraud, is made amenable to the law, and held to have contemplated the fraud afterwards perpetrated, even if at the time he had no knowledge of, or intention to defraud, the particular person; and this is in harmony with the well known principle of law that every person is supposed to contemplate the natural result of any

particular line of conduct. That the information given Dun & Co.'s agency was false, that it was communicated to Bockfinger & Co., and was the basis upon which the goods were fraudulently obtained, are facts clearly established by the evidence, and appear, under the statute, to be all the facts necessary to conviction, and are conclusive of the case. Though not alleged in the indictment, the evidence establishes the fact that, subsequent to the statement made to Dun & Co., the defendant reiterated it, when interviewed, to the firm of Bockfinger & Co., through its representative, which, if not conclusive, would go far to establish the original intention to defraud that firm, if proof of an intention to defraud a particular person or firm was necessary, which I do not believe.

An attack is made upon the indictment. It is ably and elaborately urged in argument that it is defective in substance, and fails to set out all the elements necessary to constitute the offense. A careful examination fails to sustain the contention. The offense is statutory. The statute appears to have been closely followed, and each element necessary to complete the offense clearly and carefully stated, and in the language of the statute. This is all that is required.

The other supposed errors, or some of them, are not discussed in the majority opinion; and I do not find it necessary to discuss them, as they appear to be more technical than substantial.

A brief examination of the authorities cited in support of the main opinion will show that not one of them was based upon a statute like, or similar to, the one under consideration.

In *Clark v. Commonwealth*, 16 B. Mon. 206, the defendant was indicted, under a statute of Kentucky, " for having unlawfully in his possession, on the 1st day of December, 1852, twenty counterfeit notes of the Farmers' Bank of Kentucky." The proof failed to show the possession of any of the notes described, but counterfeits of the banks of other states. The conviction was held bad. An examination will show that

the decision was based entirely upon old common law authorities, and no statute involved.

In *Commonwealth v. Magowan*, 1 Metc. (Ky.) 368, for "betting on an election," the case is decided on *Clark v. Commonwealth*. The same authorities are relied upon.

*State v. Jackson*, 30 Me. 29, was an indictment for larceny; and it was said : "When an indictment for larceny contains any particular description of the property stolen, though not necessary to be inserted, they must be proved on the trial." The authorities were all old common law decisions. No authorities were needed. The rule is as old as proceedings by indictment, but how it could be applicable in this statutory proceeding, or assist in the construction of the statute, I cannot see.

*U. S. v. Brown*, 3 McLean, 233, Fed. Cas. No. 14,666, is a reiteration of the same general principle stated in the foregoing cases.

*Commonwealth v. Harley*, 7 Metc. (Mass.) 506, was not a statutory proceeding. It was an indictment for conspiracy, at common law, to defraud certain persons. It was there held that "an averment in an indictment for conspiracy that the defendants conspired to defraud A is not supported by proof that they conspired to defraud the public generally, or any individual whom they might meet and be able to defraud." The only authority cited was 1 Chit. Cr. Law, 169, 556. Exactly the same is applicable to the case of *Commonwealth v. Kellogg*, 7 Cush. 473. The decision is based on *Commonwealth v. Harley, supra*, and it is said : "That case seems decisive of the present case."

All other authorities cited and relied upon are old common law authorities. I am at a loss to know how any of those cases can be made applicable to the case under consideration. Had the case been at common law, instead of statutory, there would be no question of their applicability or correctness. Had the common law remedies been considered adequate to correct the growing evil, and protect mercantile men from this class of experimentalists, the statute would not have been

passed. The necessity of a more broad and comprehensive remedy, with greater facilities for conviction, became necessary, hence the act. After taking the offense out of the category of common law offenses, and making it statutory, to construe the law by the precedents of the common law relegates it to its former position, and defeats the legislative intention.

The remaining questions presented pertain to the instructions. It is insisted that the court erred in refusing six instructions asked by the defendant. Number 5, as asked, was, in substance and legal effect, given by the court, in an instruction of the same number. In my view of the statute, the remaining instructions were properly refused. Through them all runs the theory that, although the statement made to Dun & Co. was false, and known to be, there could be no conviction unless plaintiff procured Dun & Co. to communicate it to Bockfinger & Co. for the purpose of enabling him to obtain the goods from that firm; or, to state it, perhaps, more clearly, that to warrant conviction the evidence must clearly show the scheme or intention to have been to defraud that particular firm. We do not so construe the statute. To give it such construction would be, in effect, to abrogate it. It is a well settled principle of law that every person of sound mind is presumed to intend the reasonable and natural consequences of his own acts, and if, by a false statement made by any mercantile agency, and through it to the mercantile community, a foundation is laid, whereby any person or firm may be defrauded, and it is shown that a certain firm was victimized by reason of such false statement, the offense is complete, and the law imputes the intention to the act. It is not necessary, as contemplated in the instructions asked, that plaintiff should have conspired with Dun & Co., and employed it to transmit the statement to Bockfinger & Co. with the intention of defrauding that particular firm. The instructions given by the court are in harmony with my construction of the statute, and fully and fairly state all the law applicable to the statutory offense. The facts of the case

were fairly presented to the jury, and were found against the defendant. I can find no error which, in my view of the case, would warrant a reversal; and I think the construction of the statute unwarranted, and that the judgment and conviction should have been sustained.

*Reversed.*