(Nos. 5824, 5872. September 3, 1932.)

NAMPA & MERIDIAN IRRIGATION DISTRICT, Respondent, v. WILLIAM E. WELSH, Watermaster of Water District 12–A of the State of Idaho; DRAINAGE DISTRICT No. 2 OF ADA COUNTY, IDAHO; DRAINAGE DISTRICT No. 3 OF ADA COUNTY, IDAHO; and DRAINAGE DISTRICT No. 4 OF ADA COUNTY, IDAHO, Appellants.

[15 Pac. (2d) 617.]

Frank T. Wyman and T. L. Martin, for Appellant Welsh; Charles F. Reddoch and Martin & Martin, for Appellant Drainage District No. 2; Laurel E. Elam, for Appellant

Drainage District No. 3; Wm. M. Morgan and E. B. Smith, for Appellant Drainage District No. 4.

McElroy & Chalfant and G. W. Grebe, for Respondent.

LEE, C. J.—On January 18, 1906, the waters of Boise River were adjudicated in the district court of Canyon county by what is commonly known as the Stewart decree awarding to plaintiff and respondent, Nampa & Meridian Irrigation District, allotment No. 67 of 8,500 inches with priority of May 1, 1878, and allotment No. 106 of 18,542 inches with priority of August 20, 1888. The decree was subsequently reversed by this court and sent back for determination of the duty of water. May 31, 1919, the district court entered a temporary order for the distribution of said waters, pending final determination of the original action.

Plaintiff sued out an alternative writ of mandate to compel the watermaster of District 12–A, comprising the waters of Boise River, to distribute its allotments as directed by said Stewart decree, joining as defendants the present ap-

pellants, William E. Welsh, watermaster aforesaid, and Drainage Districts Nos. 2, 3 and 4 of Ada County. After qualifying itself as plaintiff, pleading the aforesaid adjudication and alleging that the same did not allot or decree to said drainage districts any of the waters of Boise River, it charged that defendant watermaster during a season of drouth, although having cut plaintiff's allotments below 60 per cent, was delivering to said defendant districts 1,954 inches of water from the river for the use of the district land owners, "giving to said water an absolute priority as developed water over all the rights so as aforesaid adjudicated by the Stewart decree," and that he would continue so to do unless restrained and prohibited by the court. It further declared that said 1,954 inches was at the time "taken directly from the water of plaintiff's allotment No. 106," and was the property of plaintiff; that plaintiff was entitled to its delivery and that neither of said districts had any right nor title thereto; that said water was being delivered them for the use of land owners therein, all of whom were receiving in addition thereto full decreed rights under the Stewart decree and were using the 1,954 inches as supplemental to such rights, the which use was excessive and in violation of both said decree and the law.

Numerous objections, motions and demurrers having been denied and overruled, defendants answered, appellant watermaster admitting that said 1,954 inches was being delivered defendant districts as developed water but specifically alleging that the defendants Drainage District No. 2, Drainage District No. 3 and Drainage District No. 4 are respectively drainage districts duly organized and existing under and by virtue of the laws of the state of Idaho; that subsequent to their organization the said drainage districts, and each of them, pursuant to authority duly given by law, constructed extensive drainage systems covering lands within their respective districts; that such drains lowered the then existing water-table, thereby requiring more water in the irrigation of the said lands so drained than previous to the construction of said drainage canals; that ever since the construction

of said canals large amounts of water have been gathered
in said canals and the commissioners of said drainage dis-
tricts heretofore made and caused to be made applications
under the laws of this state for the appropriation of the
waters of said drainage canals for the use and benefit of
the owners of and to be used upon lands within the
boundaries of said districts respectively, and such applica-
tions were approved by the commissioner of reclamation of
the state of Idaho and permits issued for large amounts
of said waters as having been developed and created by said
drainage canals; that such permits are now in effect and
good standing; and thereafter the commissioners of said
drainage districts respectively apportioned the said water
in their respective drainage canals to the owners of lands
within the said districts in the proportion that the assess-
ment for drainage of each tract of said lands bore to the
whole assessment within such drainage district. That there-
upon the owners of said lands in said drainage districts
diverted, used and applied all of said waters so apportioned
and decreed to them respectively to use upon their said
lands and there used the same in the beneficial and necessary
irrigation of the same; that the said lands are arid in char-
acter but were and are highly valuable for agricultural pur-
poses when irrigated, and that the said separate tracts of
land within said drainage districts required and still require
the use of the water so apportioned and distributed to them
respectively for the use in irrigation thereof. He further
alleged that between respondent's allotments No. 67 and
No. 106 there were intervening water rights totaling 485.72
second-feet and that, should respondent's prayer be granted
and the river waters be distributed according to the Stewart
decree, none of said 1,954 inches demanded by respondent
could or would be distributed to it. He plead other defenses
not germane here. Defendant districts likewise answered,
substantially adopting these defenses of the watermaster in
addition to divers others. The court sustained separate
motions to strike against all of said answers except as to
general denials and the defense of *res adjudicata*. Trial

was had, findings of fact and conclusions of law made and entered, judgment entered in respondent's favor and a peremptory writ of mandate issued in harmony therewith. Motion for new trial was denied; hence this appeal from both judgment and order overruling the motion for new trial.

Subsequently, respondent excepted to the return of the watermaster and prayed for an *alias* writ extending the terms of the original; appellants also excepted to the return. The exceptions of both respondent and appellant drainage districts to the watermaster's reply were denied, the motion for an *alias* writ was denied; and the parties appealed from the orders affecting them. Appellants attack the trial court's jurisdiction, its failure to quash the alternative writ and certain findings of fact and conclusions of law. Among other things, the court found that all the waters in the drain ditches were public waters and that the 1,954 inches of drainage delivered appellant districts "was taken directly from the water of Allotment No. 106, and was the property of petitioner and petitioner was entitled to have said water delivered to it under said adjudication, and that said defendants had neither right nor title thereto."

This was nothing more or less than a positive determination of the character of the drainage ditch waters and the respective rights of the claimants thereto. It may be argued that the watermaster engaged in a ministerial duty was the only necessary defendant to the *mandamus* proceeding and that he could not set up the claims of land owners within the district, the real parties interested in the water in question. That he had no right to the use of the particular water did not and could not divest him of the duty of delivering it to the parties entitled to it. That right was directly put in issue by the pleadings and later, when the pleadings were stricken, forced into the inquiry by the evidence itself. If, in fact, the district land owners had no right to the drainage waters, the watermaster was without authority to deliver it to them. If they did have a right to it, it was his business to see they got it. Respond-

ent had based its right to said water upon its award under the Stewart decree; and its allegation that such water was its own property necessitated the defendants stating it was not. The defendants denied each and every allegation of the amended application, except as in their answers specifically admitted. None of them admitted respondent's declared ownership. Here, then, at the threshold of the proceeding, was a direct conflict involving rights to the subject matter. Such rights cannot be litigated in a *mandamus* proceeding. (*Stoner v. Carter,* 48 Ida. 745, 285 Pac. 470; *Sanderson v. Salmon River Canal Co.,* 34 Ida. 145, 199 Pac. 999; 38 C. J. 589, sec. 63.) When the court by its judgment directed the watermaster to "refrain from delivering to defendant drainage districts any of said waters carried by said drain ditches at all times when the waters of Boise River are insufficient to fully supply the said decreed rights," it, in effect, awarded respondent a perpetual right in and to the water in controversy. Mandate is not proper to try title to a perpetual right. (*Townsend v. Fulton Irrigating Ditch Co.,* 17 Colo. 142, 29 Pac. 453; *Combs v. Agricultural Ditch Co.,* 17 Colo. 146, 31 Am. St. 275, 28 Pac. 966; *Wheeler v. Northern Colo. Irrigating Co.,* 30 Colo. 582, 3 Am. St. 603, 17 Pac. 487; 3 Kinney on Irrigation, 2d ed., p. 3028.)

It will not do to say that on the one hand was an adjudicated right and on the other a right not yet adjudicated but only possibly inchoate. Inchoate rights, after their initiation and until ripened, are quite as immune to trespass as later on. If the waters in the drain ditches were actually developed waters satisfying the test that they augmented the natural flow of Boise River, then to the extent of that augmentation, the land owners within the districts were as much entitled to the use thereof as though their rights had been declared by a court of competent jurisdiction. It may be said that the watermaster must look to the decree for his sole guidance and must ignore every claim not therein specified. Generally speaking, this is true. But, when the watermaster, knowing that the district land owners

have for years, under permit of the State Reclamation Department, been using certain water claimed to have been created by the construction of drainage canals and theretofore allotted them by the district's commissioners pursuant to statute, following the Department's permission, and is by court order directed to distribute that water otherwhere or show reason why, we know of no rule that interdicts his explanation, unless it be that such explanation is no explanation at all. The explanation here proffered went to the very heart of respondent's right in the matter; in a nutshell, whether the 1,954 inches of drain ditch water was or was not developed water and, if not developed, whether or not respondent owned it. As before said, such questions cannot be inquired into by *mandamus*. Defendants' motion to quash should have been sustained.

In view of the conclusion reached, it is unnecessary to award a new trial as warranted by the record, had jurisdiction obtained. The judgment is reversed and the cause remanded, with directions to quash the writ and dismiss the proceeding. Costs to appellants.

The appeals from the orders made after judgment having become moot, they are ordered dismissed, the parties paying their own costs.

Budge, Varian and Leeper, JJ., and Barclay, District Judge, concur.

Givens, J., took no part.

Petition for rehearing denied.