(No. 6977. November 2, 1942.)

JUSTO ERDOISA and MARIE ERDOISA, husband and wife, Respondents, v. SOUTH SIDE BRUNEAU CANAL COMPANY, LIMITED, a corporation, Appellant.

[130 Pac. (2d) 669.]

B. W. Oppenheim, Eugene H. Anderson and Charles F. Reddoch for appellant.

Thornton D. Wyman and Maurice H. Greene for respondents.

GIVENS, C. J.—While other incidents appear in the record, the essential details of this litigation are as follows:

March 23, 1896, by posting, and April 2, 1896, by recording notice, Dow Dunning, Josiah W. Dunning, and Justin Kandle claimed and made an appropriation of 1200 inches of water of the Bruneau River for use on land on the west side thereof. Further notice of location of evidently the same amount was made by the same parties with the addition of George Dunning, April 30, filed May 4, 1896. Thereafter, Dow Dunning granted John Mitchell, November 15, 1899, 200 inches of said appropriation; George Hampton, December 20, 1901, 50 inches; James W. Randall, May 8, 1903, 16 inches. Thereafter, April 29, 1905, Dow Dunning and wife, George Dunning, Josiah W. Dunning, and Justin Kandle deeded to T. D. Cahalan all right, title, and interest in the Dow Dunning Ditch except 200 inches to 'John Mitchell, 100 inches to John Groom, 50 inches to Frank Deill, 50 inches to George Terry, 50 inches to George Hampton, 50 inches to D. B. Hyde, 50 inches to John Hutchison, 16 inches to "―――――" Randall, evidently James W. Thus, 566 of the 1200 inches were reserved, and the balance, or 634 inches, was transferred to Cahalan.

June 2, 1905, appellant, the South Side Bruneau Canal Company, Limited, was organized as a corporation under the general corporation statutes of the state, with these incorporators:

| Name | Shares of stock |
| --- | --- |
| John Crocheron | 10 |
| Morris King | 10 |
| Frank Deill | 50 |

George A. Terry .................................................................................... 50
David B. Hyde ...................................................................................... 50
John Hutchison .................................................................................... 50
James W. Randall ................................................................................ 16
T. D. Cahalan ...................................................................................... 10

and with this provision in the articles:

"Ninth. That the interest and right of all original Stockholders in this Corporation shall be in proportion to the number of shares of stock held and owned by them respectively and paid for in money or property conveyed to the Company."

On the same day the following agreement was made:

"THIS AGREEMENT, made this second day of June, 1905, (and in advance of the organization and incorporation, hereafter to be organized and incorporated, and named; SOUTH-SIDE BRUNEAU CANAL COMPANY, LIMITED; incorporating Dunning Ditch and Water Right, situate in Bruneau Valley, Owyhee County, Idaho) by and between the members and proposed incorporators of said Company whose names are hereto subscribed:

"WITNESSETH, we the undersigned, and herein above mentioned, do hereby agree to and with each other; and stipulate as follows to wit:

"FIRST; That all water now heretofore used by us and each of us and diverted and conveyed to our various pieces and parcels of land situate in said Bruneau Valley, State of Idaho, and there in use, shall ever hereafter be caused to flow, continuously and uninterruptedly as it is and as is necessary as follows:

"200 Miners Inches of water from said Dunning Ditch to be allowed for use on and across the 'T Ranch'; Represented herein below and herein by John Crocheron:

"50 Miners Inches of water for use on land owned by Frank Deill one of said undersigned:

"50 Miners Inches of water now used and for use on land owned by George A. Terry, also one of said undersigned:

"50 Miners Inches of water used and for use on land owned by D. B. Hyde, also one of said undersigned:

"50 Miners Inches of water used and for use on land owned by John Hutchison, also one of said undersigned:

"16 Miners Inches of water used and for use on land owned by James Randall, also one of said undersigned:

"100 Miners Inches of water used and for use on lands owned by Morris King and Roy A. Hodge; also being two of said undersigned:

"50 Miners Inches of water used and for use on land owned by George Hampton; Provided said George Hampton who is not present, may hereafter sign this agreement:

"All other water, (634 Miners Inches,) flowing in said Ditch, and proportionate amount of Ditch and Right of Way for same is owned by T. D. Cahalan of Boise, Idaho:

"And we the said undersigned, hereby agree to and with each other, to convey all of said water and our proportionate Right Title and Interest in and to said Ditch and Right of Way by good and sufficient deed to said Corporation as soon as it is organized and to accept therefor from said Corporation its Share of Stock equal in amount to the inches of water so conveyed (One Share of Stock to One Miners Inch of water including proportionate Right of Way and Ditch), such deeds of conveyance from the respective persons, being the undersigned, to convey to said corporation for its Shares of Stock as aforesaid all of our individual and separate Rights, Titles, Interests, Franchises, and Water Rights pertaining to said Ditch, including proportion of said Ditch and Right of way: Save and except, that the priorities of said water users shall ever hereafter remain as they now are:

[with a further provision in regard to enlargement which is not material herein]."

This agreement was accepted by resolution dated July 3, 1905, appellant's exhibit "D", paragraphs 2, 3, and first and second:

"That whereas, on the 2nd June, 1905 John H. Cocheron, D. B. Hyde, George A. Terry, Frank Deill, T. D. Cahalan, Morris King, Roy A. Hodge, John Hutchison and James W. Randall did then and there enter into a written agreement which agreement provided (among other things) that the said makers of the agreement aforesaid were willing and they thereby agreed to and did make to the South-Side Bruneau Canal Company, Limited (as soon as same should be organized and incorporated,) the following proposition, to wit: That for and in consideration of 1200 shares of the paid up Capital Stock of said corporation of the par

value of $25. per Share, and aggregating a total par value for the said 1200 Shares of the sum of $30,000: Said Shares to be issued and delivered to the following named persons as follows to wit: 200 Shares thereof to John H. Crocheron; 50 Shares thereof to Roy A. Hodge; 50 shares of said stock to Morris King; 50 Shares thereof to Frank Deill; 50 said Shares to George Terry; 50 Shares of said Stock to D. B. Hyde; 634 Shares of said Stock to T. D. Cahalan; 50 Shares of said Stock to John Hutchison and 16 Shares of said Stock to James W. Randall;

"That they the said herein above named persons would, and they thereby agreed to, upon receipt of the said 1200 shares of Stock issued to them in the manner herein above provided; make, execute and deliver unto the said South-Side Bruneau Canal Company, Limited good and sufficient deeds of conveyance, deeding and conveying, to said Corporation all of their separate and individual rights, titles, interests and property in and to that certain Ditch KNOWN AS THE DOW DUNNING DITCH, and water rights and water conveyed therein and thereby; (Said ditch being situate in Bruneau Valley, Owyhee County, Idaho), with all appurtenances thereunto belonging: And whereas, said proposition having been this 3rd day July 1905, presented to and before all of the Stockholders of said Corporation in open meeting duly assembled and having been carefully considered by said Stockholders it is hereby by said Stockholders unanimously resolved and agreed as follows, to wit:

"First, that said Corporation by and through its said Board of Directors and Stockholders, owning and representing all of the subscribed capital stock of said corporation, does hereby accept the terms of said proposition, and hereby agrees to and with the makers of said proposition aforementioned to issue and deliver to them and each of them, in the manner herein before set forth and proposed, the said 1200 Shares of its paid up Capital Stock, upon receipt from the said proposers of the conveyances aforesaid of the Ditch and Water Rights aforesaid,

"Second, THEREFORE, The President and Secretary of said Corporation are hereby authorized and instructed to make, issue, and deliver to each of the aforementioned proposers, the respective Shares of paid up Capital Stock of this Corporation, in the manner herein above proposed and set forth."

The articles of incorporation provide:

"Seventh. The amount of the Capital Stock is $30,000 (Thirty Thousand dollars) divided into Twelve-hundred (1200) shares of the par value of Twenty-five dollars each. Each share representing 1/1200 of the entire property or rights and franchises of the Company."

Section 7 of Article 4 of the by-laws provides:

"[It shall be the duty of the Board of Directors] To cause to be issued to the Stockholders, in proportion of their several interests, certificates of stock, not to exceed in the aggregate the capital stock of the Company, based on the actual quantity of water owned and controlled by this Company, one share of such Stock representing one-Twelfth-hundred (1/1200 of all the property, rights and franchises owned by the Company."

Sec. 9 of art. 5 of the by-laws provides:

"Each share of stock shall when fully paid up, vest in the then legal holder thereof one-twelfth-hundred (1/1200) share in and to all the rights, property, water rights, franchises, ditches, dams, canals, laterals and all other property owned and possessed by the company."

While the articles and by-laws were thereafter amended and the corporation brought under the non-profit or mutual corporation statutes of the state, 1936, such changes did not materially affect the action herein and were made after the rights of the parties herein as to this action became fixed, and, therefore, need not be further considered.

Elizabeth Polk acquired 80 shares of the Cahalan stock; 70 shares thereof in turn passed by mesne conveyances and transfers to respondent Justo Erdoisa.

About July, 1939, respondents applied for a continuance of water under their shares of stock and were refused by appellant company on the theory that they had only a priority of April 1, 1905, known as a flood water right, part of the 634 inches transferred to Cahalan, and inferior to what was contended by the company to consist of a priority of 612 inches of the 1200 inches of March 23, 1896, and 96 inches of April 1, 1897, and that the stage of water in the river did not permit delivery to respondents after about July 1. Respondents had received their 70 inches up to that time. Whereupon, respondents sued in

mandamus to compel the delivery of the proportionate share to which they claimed they were entitled of the 1200 inches of water made up of their proportionate share of all three priorities, i.e., 70/1200.

September 19, 1920, an action was commenced in the third judicial district in and for Owyhee County to adjudicate the rights of the various appropriators of Bruneau River.[1] In that suit respondents' predecessor in interest, Mrs. Polk, made a special appearance, urging a priority not consented to by appellant. Priorities between the ditches in the Bruneau Valley were determined and formed the basis for the stipulation upon which the consent decree was entered, as follows: A committee of three, one from each of the three principal ditch organizations in the valley, including appellant, employed a competent engineer who surveyed and catalogued the lands in three classes—the acreage being irrigated in 1919, the acreage susceptible of irrigation from the extant ditches, and the land not susceptible of irrigation, as per example sheet 55 of defendant's exhibit "M":

"John H. Hutchinson

| | |
|---|---|
| Irrigated | 55.39 A. |
| Above ditch [non-irrigable] | 40.48 " |
| ~~Other Lands~~ | 24.13 " |
| Irrigable | 120.00 " " |

Respondents' land was not classified or reported on, but the engineer stated it was susceptible of irrigation. As to appellant, the lands being irrigated were, by this committee, given a priority of 1896, amounting to 612 inches; the land brought under irrigation during the pendency of the litigation (about 4-5 years), 96 acres, was given a priority of 1897; and the balance susceptible of irrigation, including respondents' lands, 492 acres, was given a priority of 1905. Such priority to respondents was evidently not expressly given but was rather by silent acquiescence. The appellant, by stipulation with the other parties in that suit, fixed the priorities of appellant as of the three dates above mentioned, for 1200 inches, the first two being superior to the rights of the Grandview Irrigation District, and the third

---

[1] Grandview Irrigation District v. Bruneau Buckaroo Co-operative Ditch Co., et al., No. 10604.

being inferior, but by stipulation it was agreed that said decree did not affect the rights or interests of respondents' predecessor in interest, Mrs. Polk, the stipulation and decree expressly reciting such reservation as follows:

"The defendant, Elizabeth A. Polk, having appeared herein as cross-complainant, basing her claim to the waters of the Bruneau River upon a certificate representing shares of stock in the South Side Bruneau Canal Company, Ltd., a mutual co-operative ditch company, also defendant herein, and the said South Side Bruneau Canal Company, Ltd., having pleaded on behalf of all of its stockholders and the issue sought to be raised by the answer and cross-complaint of the said Elizabeth A. Polk, being a controversy between her and the South Side Bruneau Canal Company, Ltd., only, involving the extent of her shares as represented by said stock, in any water right secured by this said company: It is hereby stipulated by and between the said Elizabeth A. Polk and the said South Side Bruneau Canal Company, through their respective counsel, that the said answer and cross complaint of the said Elizabeth A. Polk may be dismissed without prejudice, and all other parties to this suit do hereby consent to the dismissal of the separate answer and cross complaint of Elizabeth A. Polk without prejudice to any controversy between her and the defendant, South Side Bruneau Canal Co., Ltd., but with prejudice as to all other parties.

"The decree of such waters to the Bruneau Buckaroo Co-operative Ditch Company as appurtenant to its canal shall be without prejudice to the right of any stockholder thereof to assert any claim as to the amount of water to which he is entitled either as against the corporation itself or against his co-stockholders; it being the intention of this decree to define the stockholders' rights, as represented by said corporation, in the aggregate, but not to define their individual rights as among themselves."

Appellant contends this is in effect a water suit to fix the priority of respondents' water right, and that since a controversy exists in regard thereto and respondents have not shown a clear legal right to the relief sought, mandamus is not the proper proceeding, relying upon *Lewis v. Mountain Home Co-op. Irr. Co.*, 28 Ida. 682, 156 Pac. 419; *Sanderson v. Salmon River Canal Co.*, 34 Ida. 145, 199 Pac. 999; *Stoner v. Carter*, 48 Ida. 745, 285 Pac. 470; *Leland v. Twin Falls Canal Co.*, 51 Ida. 204, 3 Pac. (2d) 1105; *Nampa*

& *Meridian Irrigation District v. Welsh,* 52 Ida. 279, 15 Pac. (2d) 617.

It is appellant's further contention that respondents are entitled to only 70 inches of water of the original amount transferred to T. D. Cahalan, with a priority of 1905. Respondents, on the other hand, contend it is not a water suit, merely an action to compel the appellant corporation to furnish respondents the quantity of water they are entitled to under their certificate of stock.

▆▆▆ The rule deducible from the authorities urged by appellant is that mandamus will not lie unless the conclusion, not the inception, of the suit shows claimant has a clear right to have water delivered to him by the company, that he has crops which are in need of the water, and that the canal company has water which can be delivered to him. *Sanderson v. Salmon River Canal Co.,* supra, at 159. Respondent made a prima facie case by showing that under the articles of incorporation and his certificate of stock he was entitled to 70 inches of water, that the company had a priority of 1200 inches in the stream, hence, that except for the affirmative defense set up by appellant there was water available for him. The burden was on appellant, not respondents, to establish the affirmative defense.

We need not and do not decide whether or to what extent appellants were entitled to go behind the articles of incorporation and the certificate of stock in showing that the same were limited by the reservations above referred to, for this reason, that while, generally speaking, the articles and the certificate of stock constitute the contract between the corporation and the stockholder defining their respective rights and duties and liabilities (*Garey v. St. Joe Mining Co.,* 32 Utah 497, 91 Pac. 369, 12 L. R. A. N. S. 554), followed by this court in this point in both the majority and minority opinion in *Frost v. Coeur d'Alene Mines Corp.,* 60 Ida. 491, 92 Pac. (2d) 1057, and in *Fower v. Provo Bench etc. Co.,* 99 Utah 267, 101 Pac. (2d) 375; *Crescent Canal Co. v. Kings County Development Co.,* 43 Cal. App. (2d) 370, 110 Pac. (2d) 1006; *Pronik v. Spirits Distributing Co.,* 58 N. J. Eq. 97, 42 Atl. 586; *Morris v. American Public Utilities Co.,* 14 Del. Ch. 136, 122 Atl. 696, the trial court permitted appellants all the latitude sought by them in interposing their defense. Their defense, however, for its efficacy depended upon a showing that under the reservations respondents' predecessor in interest received under her certifi-

cate of stock an inferior priority or that in later proceedings such was established by decree of court in proceeding to which respondents or their predecessors in interest were parties.

The court found and there is ample evidence, or lack of evidence, as the case may be, to support this finding:

"the resolution of the corporation accepting the same, the deeds of conveyance to the corporation nor the certificates of stock issued for such deeds, set forth or established in any manner priorities of rights to the use of the waters of the Bruneau River by the promoters to whom such stock was issued; that no evidence was offered in this cause to establish such priorities, if any, and it is impossible to determine the existence of priorities as between the original stockholders of the corporation; that no attempt was made to classify stock certificates with respect to priorities as between shareholders of the South Side Bruneau Canal Company, Limited, until the year 1936."

It is true the certificate of stock issued to respondents, replacing the certificate to their immediate predecessor, contained thereon a notation of "a flood water right." The record, however, discloses affirmatively that such was placed thereon by the secretary without official authorization and was not acquiesced in by respondent or his immediate predecessor in interest. Conceding, therefore, without deciding, that appellant corporation might place reliance on the pre-organization contract and reservation as against the plain statement and import in its articles and the stock, the record fails to disclose that it sustained such affirmative defense to the effect that respondents' land was by such reservation entitled to only a third priority, rather than a share in the composite three priorities.

Appellant urges no water except waste water was used under respondents' certificate of stock until 1936, hence, respondents have no rights except to take under the inferior priority. If there has been abandonment, they would probably be entitled to no water, but appellant recognizes respondents' right to some water, also, all this time assessments have been fully paid by respondents or their predecessors and accepted by the company, hence, appellant is in no position to urge abandonment. Respondents and their predecessors in interest have at all times claimed rights under the stock, and the court expressly found there was

no estoppel. As between the parties hereto respondents have complied with the requirements in mandamus, and the trial court was therefore correct in ordering appellant to deliver to respondents the amount of water called for by their stock based upon the provisions of the articles of incorporation. (*Rocky Ford Canal etc. Co. v. Simpson*, 5 Colo. App. 30, 36 Pac. 638; *Richey v. East Redlands Water Co.*, 141 Cal. 221, 74 Pac. 754; *Miller v. Imperial Water Co.*, 156 Cal. 27, 103 Pac. 227; *Crescent Canal Co. v. Kings County Development Co.*, supra, at 1009.)

We want it distinctly understood this controversy is solely between the company and respondents as stockholders thereof, and we in no way or at all consider or pass upon the rights of other stockholders who are not parties hereto.

The judgment is therefore affirmed. Costs awarded to respondents.

Budge, Holden, and Ailshie, JJ., concur.